Date signed April 28, 2009



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MARYLAND
## at GREENBELT

| | | | |
|---|---|---|---|
| In Re: | * | | |
| Kevin Newcomer | * | Case No. | 02-13178 |
| | * | Chapter | 13 |
| Debtor | * | | |
| * * * * * * * * * * * * * * * * * * | * | | |
| Kevin Newcomer, *et al.* | * | | |
| Plaintiffs, | * | | |
| v. | * | Adv. No. | 07-00479 |
| Litton Loan Servicing, L.P., | * | | |
| Defendant. | * | | |

## MEMORANDUM OPINION

Debtor Kevin K. Newcomer (the "Plaintiff") and his wife, Louise M. Newcomer

("Mrs. Newcomer") (collectively, the "Plaintiffs") have brought this action against Litton

Loan Servicing, LP ("Defendant"). The Amended Complaint asserts four counts: Count

1, violation of the automatic stay of §362 of the Bankruptcy Code; Count 2, violation of

§1327 of the Bankruptcy Code; Count 3, violation of §1328 of the Bankruptcy Code; and Count 4, intentional infliction of emotional distress.[1]  The parties have filed cross-motions for summary judgment (Docket Nos. 134 and 136), and oppositions thereto (Docket Nos. 148 and 149).  The Court held a hearing on these and other matters on April 15, 2009.  For the reasons stated herein, the Court will:

- Deny Defendant's motion on the grounds that any counts are barred by the statute of limitations;

- Grant Defendant's motion as to Mrs. Newcomer on all four counts based on her lack of standing;

- Grant Plaintiff's motion on Count 1 for violation of the automatic stay resulting from Defendant's issuance of the March 11 Acceleration Letter and the March 12 Acceleration Letter (as defined herein), with the issue of damages reserved for trial;

- Grant Defendant's motion on Count 1 for violation of the automatic stay resulting from Defendant's issuance of the Validation Notice (as defined herein);

- Grant Defendant's motion on Count 1 to the extent it seeks summary judgment that Defendant's phone calls to Mrs. Newcomer did not violate the automatic stay;

- Deny both Plaintiff's and Defendant's motions on Count 1 to the extent they seek summary judgment that Defendant's phone calls to Plaintiff (as opposed to Mrs. Newcomer) did or did not, as the case may be, violate the automatic stay, which claims will be determined at trial;

- Deny both Plaintiff's and Defendant's motions as to Count 2;

- Deny both Plaintiff's and Defendant's motions as to Count 3;

- Grant Defendant's motion for summary judgment on Count 4.

---

[1] Plaintiff's bankruptcy case was filed in 2002.  Therefore, all references to statutory provisions of the Code in this Memorandum Opinion are to the 2002 version of the Code.

## STATEMENT OF FACTS

On March 13, 2002, Plaintiff filed for Chapter 13 relief in this Court, initiating Case No. 02-13178.  Mrs. Newcomer did not join in the petition and was not a debtor in bankruptcy at any time after Plaintiff commenced his case.

Prior to the filing, on or about May 20, 1996, Mrs. Newcomer executed a promissory note in favor of First Savings Mortgage Corporation in the principal amount of $89,350 (the "Note").  The Note was secured by Mrs. Newcomer's deed of trust (the "Deed of Trust") against 2617 Newton Street, Wheaton, MD (the "Property").

At the time Mrs. Newcomer executed the Note and Deed of Trust, Plaintiff did not own an interest in the Property.  He is not and has never been a party to the Note or the Deed of Trust.

Plaintiff acquired an interest in the Property in 2002.  Mrs. Newcomer executed and had recorded a quitclaim deed dated June 2, 2002, transferring her interest in the Property to herself and Plaintiff, as tenants by the entirety.  A handwritten notation on the quitclaim deed states that "Kevin and Louise have made all mortgage payments and will continue to make all mortgage payments in the future.  No Grantor or grantee is assuming liability for a debt or is being relieved of liability for debt in this transaction."

There is no dispute that the precipitating cause of Plaintiff's bankruptcy filing was that the Note was in default.  At that time, the Note and Deed of Trust were serviced by Homecomings Financial, LLC ("Homecomings").  Homecomings filed a Proof of Claim in the case seeking payment in the amount of $9,735.32 for missed monthly mortgage payments plus late fees and unspecified additional expenses of $2,947.75, for a total arrearage claim under the Note of $12,683.07.

Plaintiff filed a Chapter 13 Plan (the "Plan") on March 28, 2002. The Plan provided, in relevant part, that "the trustee will cure all pre-petition arrears, costs and fees in full (100%), required by 11 USC §1325(a)(5) on the following claim . . . Homecomings Financial Network." The Plan was confirmed by Order Confirming Plan entered on October 22, 2002.

The servicing rights on the Note and Deed of Trust were transferred from Homecomings to Defendant in January or February, 2004. There is no dispute between the parties that Defendant had actual notice of Plaintiff's Chapter 13 filing by February 13, 2004 at the latest.

Defendant's internal documents obtained by Plaintiffs in discovery reflect that Defendant made numerous calls to the Plaintiffs' residence during February and March 2004, and sent three letters addressed to Mrs. Newcomer. These calls and letters are the subject of Plaintiffs' claims under Count 1, and will be addressed more fully in the discussion of Count 1 in Section D., *infra*.

On October 19, 2006, the Chapter 13 Trustee filed the Notice of Plan Completion. Plaintiff received his discharge on October 19, 2006, and the Trustee filed the Final Report and Account on January 10, 2007. The Final Report and Account reflects that Defendant was paid $12,683.07 under the Plan. The bankruptcy case was closed on January 16, 2007.

On February 28, 2007, Plaintiff filed a motion to reopen the bankruptcy case in order to file a motion to hold Defendant in contempt for violating the discharge injunction of 11 U.S.C. §524. The contempt motion was filed as an exhibit to the motion to reopen. The Court reopened the bankruptcy case on March 12, 2007, and the contempt

4

motion was filed the next day.  The contempt motion asserted that Plaintiff made all of his payments under the Plan and kept the Note payments current post-petition, but nevertheless Defendant, in violation of the Bankruptcy Code, charged late fees and asserted that the Note was in default.

On June 19, 2007, Plaintiff withdrew the contempt motion and filed this adversary proceeding.  In the original complaint, Plaintiffs brought ten counts for relief.  Numerous counts were dismissed by the Court on Defendant's motion to dismiss or were withdrawn by Plaintiffs.  Plaintiffs filed an Amended Complaint (the "Amended Complaint") on December 12, 2007, bringing the four counts described above.  No motion to dismiss the Amended Complaint was filed by Defendant.

## STANDARDS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c), made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment shall be granted forthwith "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment may only be awarded by a court when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See Mercantile Peninsula Bank v. French (In re French)*, 499 F.3d 345, 351 (4th Cir. 2007) (citation omitted).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[S]ummary judgment will not lie if the dispute about a material

fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, a court "must consider whether a reasonable jury could find in favor of the nonmoving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the nonmovant." *In re French*, 499 F.3d at 352 (quoting *In re Apex Express Corp*., 190 F.3d 624, 633 (4th Cir. 1999). *See also Board of Education of Independent School District No. 92 of Pottawatomie County v. Earls*, 536 U.S. 822, 849 (2002) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

## CONCLUSIONS OF LAW

Generally speaking, the claims in the Amended Complaint fall into two categories. In the first category, Plaintiffs contend that calls made by Defendant's representatives to Plaintiffs and letters sent by Defendant to Mrs. Newcomer violated the automatic stay of §362. In the second category, Plaintiffs contend that Defendant ignored its obligations under the Plan and Bankruptcy Code by maintaining an accounting system that was incapable of properly applying payments in a Chapter 13 case. Plaintiffs contend that Defendant's accounting system required it to apply every payment received – whether it was a post-petition loan payment made directly by the Plaintiffs or a pre-petition arrearage payment made by the Trustee under the Plan – to the earliest scheduled payment due. According to Plaintiffs, while they were making timely post-petition loan

payments, Defendant was crediting those funds as if they were intended for pre-petition payments that had been missed by Plaintiffs.  Thus, according to Plaintiffs, Defendant was incapable of determining whether Plaintiffs remained current on post-petition payments, it improperly charged late fees, and it improperly asserted that Plaintiffs were in default under the Note and Plan.  Defendant counters that it took substantial steps, by auditing the account and otherwise, to assure the accuracy of the application of the payments.

Before turning to the merits of the claims, the Court will address Defendant's contention that Plaintiffs' claims are barred by the statute of limitations, lack of standing, and lack of subject matter jurisdiction.

### A.  Statute of Limitations

Defendant argues that the statute of limitations bars all claims based upon any action of Defendant (or Homecomings) which occurred before June 19, 2004.  *See* Defendant's Memorandum, pp. 46-47.  Defendant has the burden of proof with regard to the affirmative defense of statute of limitations.  *See Joyce v. A.C. and S., Inc*., 785 F2d. 1200, 1210 (4th Cir. 1986); *see also Sensormatic Security Corp. v. Sensormatic Electronics Corp.*, 455 F. Supp.2d 399, 425 (D.Md. 2006).

Defendant notes that the Bankruptcy Code does not contain a statute of limitations for claims brought under the Code.  Citing *Board of Regents v. Tomanio*, 446 U.S. 478 (1980), Defendant argues that in such cases, federal law adopts "the state law of limitations governing an analogous cause of action."  Memorandum, p. 46 (quoting *Tomanio*, 446 U.S. at 483-484).  *Tomanio* states that "[w]hen such a void occurs, this

Court has repeatedly 'borrowed' the state law of limitations governing an analogous cause of action." *Id*.

In *Tomanio*, as in many of the cases in which the Supreme Court has condoned such borrowing, the cause of action was one brought under statutes enacted pursuant to the Civil Rights Acts of 1866 and 1871, *i.e*., 42 U.S.C. §1981 and 42 U.S.C. §1983. The distinguishing feature between such cases under the Civil Rights Acts, and the instant case under the Bankruptcy Code, is that the jurisdictional provision enacted along with §§1981 and 1983 – which is 42 U.S.C. §1988 – indicates that such borrowing is appropriate for those statutes: "In 42 U.S.C. §1988, Congress has implicitly endorsed this approach with respect to claims enforceable under the Reconstruction Civil Rights Acts." *Wilson v. Garcia*, 471 U.S. 261, 267 (1985). The Supreme Court has also endorsed this approach with regard to specific statutes, namely, the National Bank Act, the Patent Act, the Sherman Antitrust Act, and the Labor Management Relations Act. *See Johnson v. Railway Express Agency, Inc*., 421 U.S. 454, 462 (1975) (citing cases). The Supreme Court has not endorsed this approach with regard to the Bankruptcy Code.

Arguing that Plaintiffs' claims in this case "are most analogous to tort claims for personal injury or for breach of contract[,]" Defendant relies specifically on *In re Bernheim Litigation*, 290 B.R. 249 (D.N.J. 2003), to support its argument that this Court should apply Maryland's general limitations period for civil actions, which is three years. Defendant states that the *Bernheim* court applied the "analogous New Jersey statute of limitations for tortious injury to real property or personal property to claims arising under what was then Section 362(h) of the Bankruptcy Code." Memorandum, p. 46 (citing

*Bernheim*, 290 B.R. at 259-260).  With regard to the issue of borrowing state limitations

periods, the *Bernheim* court stated:

> Defendants argue that when a federal statute lacks a limitations period,
> federal courts borrow state limitations periods governing "analogous" state
> causes of action. While federal courts do borrow analogous state
> limitations periods, they also sometimes borrow analogous federal
> limitations periods, apply no limitation period, or apply the doctrine of
> laches.

*Id*. at 258.  That court noted that it was unable to find any reported case imposing

a statute of limitations on §362(h).  In fact, *Bernheim* cites *Price v. Rochford*, 947

F.2d 829, 831 (7th Cir. 1991), in which the Seventh Circuit expressly declined to

impose a "limit on the breadth of the provision" and held that §362(h) creates a

cause of action that survives even the termination of the underlying bankruptcy.

In the end, the *Bernheim* court did borrow the limitation period from New Jersey

law, but only because it determined that "ultimate resolution of the issue depends

on the application of New Jersey common law" and the existence of the legal

right at issue "determines the possibility of liability under all claims, including

any violation of the automatic stay under the bankruptcy code."  *Bernheim*, 290

B.R. at 259-260.

     All in all, this Court concludes that Defendant has not met its burden of proof as

to the applicability of the Maryland limitations period in this case.  The primary claim to

which the Defendant directs the statute of limitations defense is the alleged violation of

the automatic stay.[2]  That claim does not depend on Maryland common or statutory law,

unlike *Bernheim*.  The Court sees no convincing reason, and Defendant has not proffered

---

[2] Application of the Maryland three-year statute would bar Count 1 to the extent it claims a violation of the
automatic stay based on the letters and phone calls in February and March 2004.  It would not provide a bar
to Counts 2, 3 or 4.

any, for this Court to borrow the Maryland statute of limitations in this case.

Accordingly, Defendant's motion for summary judgment – based solely on the contention that Maryland's three-year statute of limitations applies – will be denied.

**B.   Standing**

Defendant does not argue that Plaintiff lacks standing to bring any of the claims stated in the four counts of the Amended Complaint, and the Court does not have any doubt that Plaintiff has that capacity.  Defendant does argue, however, that Mrs. Newcomer, a nondebtor, lacks standing to assert the claims stated in Counts 1-3 of the Amended Complaint.  The Court agrees.

"[L]imitations on standing are of paramount importance in bankruptcy proceedings." *In re Baltimore Emergency Services II, Corp.*, 432 F.3d 557, 560-561 (4th Cir. 2005).  "Courts consistently have noted a public policy interest in reducing the number of ancillary suits that can be brought in the bankruptcy context so as to advance the swift and efficient administration of the bankrupt's estate. This goal is achieved primarily by narrowly defining who has standing in a bankruptcy proceeding." *Richman v. First Woman's Bank (In re Richman)*, 104 F.3d 654, 656-657 (4th Cir. 1997).  "To have standing to seek the requested relief a plaintiff must have a personal stake in the outcome of the controversy as well as be [in] the class of persons intended to benefit from the statute."  *In re Bennett*, 317 B.R. 313, 316 (Bkrtcy.D.Md. 2004) (citation omitted).

"The purpose of the automatic stay, in addition to protecting the relative position of creditors, is to shield the debtor from financial pressure during the pendency of the bankruptcy proceeding." *Winters by and through McMahon v. George Mason Bank*, 94 F.3d 130, 133 (4th Cir. 1996).  "The stay is intended to protect the interests of creditors as

well as debtors, and [t]hose persons whom Congress has designated as beneficiaries of the stay have standing to asserts its violation." *Bennett*, 317 B.R. at 318 (citation omitted).

In the instant case, Mrs. Newcomer is not (and was not) either a debtor or a creditor, and therefore is not in the class of persons primarily intended to benefit from the automatic stay of §362.[3]  She is the obligor on the Note, which is secured by property of the estate and a co-owner of that property.  Any attempt by her to invoke the automatic stay to protect her position as an obligor is unavailing.  Moreover, while the estate's interest in the Property is clearly protected by the automatic stay, Mrs. Newcomer lacks standing under the automatic stay to protect <u>her</u> interest in the Property.  Non-debtors are "not protected by the automatic stay of Section 362(a) of the Bankruptcy Code" and, as a consequence, "ha[ve] no standing whatsoever to raise the issue of its violation."  *In re Pharmakinetics Laboratories, Inc*., 139 B.R. 350, 353 (D.Md. 1992).  Accordingly, the Court concludes that Mrs. Newcomer does not have standing to state a claim for violation of the stay, and summary judgment will be granted to Defendant on Count 1 as to her.

With regard to Counts 2 and 3 of the Amended Complaint – alleging violations of 11 U.S.C. §§1327 and 1328 – the Court takes note of the statutory language as evidence of the class(es) of persons intended to be within the cognizance of those provisions.  In relevant part, §1327(a) states that "[t]he provisions of a confirmed plan bind the debtor and each creditor . . . , §1327(b) "vests all of the property of the estate in the debtor[,]" and §1327(c) makes the vesting of the estate property "free and clear of any claim or

---

[3] After court-ordered supplemental briefing and oral argument on the issue, the Court ruled at the April 15, 2009 hearing – consistent with its prior ruling at the November 14, 2007 hearing – that the co-debtor stay of 11 U.S.C. §1301 does not apply to Mrs. Newcomer in this case.  Since Plaintiff is not obligated on the Note, the prerequisite for the application of §1301 did not exist – there was no act to collect "a consumer debt of the debtor." See U.S.C. §1301(a).  *See also* 11 U.S.C.§101(8)(defining "consumer debt" as a "debt incurred" by an individual primarily for personal, family or household purposes.)

interest of any creditor provided for by the plan." As for §1328, which deals with the discharge granted to a Chapter 13 debtor under specified conditions, the relevant parties encompassed by that statutory provision are the debtor and claimants against the estate (or, put another way, creditors).

As with the automatic stay of §362, the parties intended to benefit from §§1327 and 1328 are debtors (who receive a discharge) and creditors (who are treated fairly and ratably via the discharge provisions). And, again, Mrs. Newcomer neither is nor was a debtor or a creditor in Bankruptcy Case No. 02-13178. Moreover, she was not a party to the Plan and her liability on the Note is not discharged under the Plan. *See* 11 U.S.C. §524(e). Therefore, the Court concludes that Mrs. Newcomer does not have standing to state a claim for violation of §1327 or §1328, and summary judgment will be granted to Defendant on Counts 2 and 3 as to her.

Finally, with regard to Count 4, the claim of intentional infliction of emotional distress is, at its core, based on allegations that Defendant violated the automatic stay (of §362), the Plan (made binding after confirmation by §1327), and the discharge granted to her husband, the Debtor (under §1328). Given that Mrs. Newcomer does not have standing to bring a cause of action based directly on alleged violations of these Bankruptcy Code provisions, the Court concludes that neither does she have standing in this bankruptcy proceeding to bring a purely state law tort claim which is based on those same alleged violations of Bankruptcy Code provisions.

For the various reasons discussed above, summary judgment will be granted to Defendant on all four counts with regard to Mrs. Newcomer.

### C.  Subject Matter Jurisdiction

As a threshold matter, Defendant contends that the Court lacks subject matter jurisdiction over the claims in the Amended Complaint because the claims are not "related to" a case under title 11.  *See* 28 U.S.C. §1334(b).  Having dismissed the claims of Mrs. Newcomer for lack of standing, the Court will address Defendant's subject matter jurisdiction argument with regard to Plaintiff's claims only.

This Court derives its jurisdiction from the district court under 28 U.S.C. §1334 (and the standing order of reference contained in Local Rule 402 of the U.S. District Court, D.Md.).  Section 1334(a) grants the district court "original and exclusive" jurisdiction over all cases under title 11; §1334(b) grants the district court "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. §1334(a),(b).

The Court does not disagree with Defendant that Plaintiff's claims are not "related to" a bankruptcy case for purposes of §1334(b).  Although Defendant does not cite it, the leading case in the Fourth Circuit for "related to" jurisdiction is *Valley Historic Limited Partnership v Bank of New York*, 486 F.3d 831 (4th Cir. 2007).  There, the Fourth Circuit held that "related to" jurisdiction requires a close nexus between the bankruptcy plan and proceeding: "matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus."  486 F.3d at 836-837.  The Fourth Circuit held that the bankruptcy court lacked subject matter jurisdiction over pre-petition state law claims against the chapter 11 debtor's lender which the debtor sought to bring after the plan had been confirmed and consummated, and all creditors had been paid.  The court concluded that "no conceivable

bankruptcy administration purpose" could be served by allowing the debtor to bring the action before the bankruptcy court.  *Id*.

The Plan has been completed and Plaintiff's creditors have been paid the amount to which they were entitled under the Bankruptcy Code.  There is no suggestion in the Amended Complaint or otherwise that any recovery by Plaintiff will be paid to his creditors.   Under these circumstances, applying the holding of *Valley Historic*, the Court would conclude that it lacked "related to" jurisdiction.

Defendant, however, ignores the existence of  "arising under" and "arising in" jurisdiction under §1334.  Counts 1-3 rely on specific provisions of the Bankruptcy Code and therefore arise under Title 11.  *See In re Jones*, 397 B.R. 775, 780 (Bkrtcy. S.D.W.Va. 2008) ("a civil proceeding 'arises under' title 11 (the Bankruptcy Code) when the cause of action or right is one that is created by the Code") (citations omitted).

 Further, the Court has jurisdiction over Count 4, the intentional infliction of emotional distress claim, under "arising in" jurisdiction.  In Count 4, Plaintiff alleges that Defendant, with reckless disregard for its obligations under the Plan and the Bankruptcy Code, maintained an accounting system that was incapable of properly applying payments in a Chapter 13 case.  He contends that Defendant's accounting system could not differentiate between post-petition loan payments made directly by Mrs. Newcomer and pre-petition arrearage payments made by the trustee under the Plan.  He alleges that Defendant's actions caused him severe emotional distress.

A claim "arises in" Title 11 if it is one "that is not based on any right expressly created by Title 11, but nevertheless could have no existence outside of bankruptcy." *Grausz v Englander*, 321 F.3d 467, 471 (4th Cir. 2003).  A controversy "arises in" Title

11 when "it would have no practical existence but for the bankruptcy." *Id*. (quotations
omitted). *Grausz* is instructive. There, the Fourth Circuit held that under the Court's
"broad interpretation" of arising in jurisdiction, the bankruptcy court had jurisdiction over
a state law tort action (legal malpractice) against the debtor's former bankruptcy counsel
because the allegedly negligent advice was given in a bankruptcy case. *Id*. at 471-472.

Here, Count 4 asserts a state law tort action based on alleged violations of the
Bankruptcy Code and the Plan. Perhaps the linkage to the bankruptcy case is not quite as
obvious as *Grausz*, but it nevertheless plainly exists. Only in a chapter 13 bankruptcy
case could a debtor cure a pre-petition default by paying arrearages over the life of the
plan while maintaining post-petition loan payments. *See* 11 U.S.C. §1322(b)(5). And it
is this aspect of the Plan that the Plaintiff contends Defendant ignored and which
allegedly caused him emotional distress. Thus, the claim would have no practical
existence "but for" the bankruptcy case and "arising in" jurisdiction exists.

### D.   Violation of 11 U.S.C. §362

Plaintiff alleges that Defendant mailed the Plaintiffs letters attempting to collect
on the Note and threatened to foreclose on the Property during the pendency of the
bankruptcy case.[4] Plaintiff also contends that Defendant's representatives called Plaintiff

---

[4] Plaintiffs also allege in Count 1 that Defendant misapplied payments, improperly assessed late fees and
other charges, and filed improper motions for relief from the automatic stay, and that these actions all
constitute additional violations of the stay. The allegations of misapplied payments and improper charges
are relevant to Counts 2 and 3, and the Court will address those matters in the context of those counts.
Resolution of those issues will fully address the bases for Plaintiffs' allegations that the motions for relief
from stay "falsely alleged" certain facts. *See* Amended Complaint, p. 11, ¶ 66. To the extent that Plaintiffs
intended to allege that the filing of a motion for relief from stay is a *per se* violation of the stay, the Court
summarily rejects such argument. *See In re Sammon*, 253 B.R. 672 (Bkrtcy.D.S.C. 2000) (noting that "a
request for relief from the automatic stay . . . cannot in itself constitute a violation of the stay") (citation
omitted). *See also U.S. v. Inslaw, Inc.*, 932 F.2d 1467, 1474 (D.C.Cir. 1991) (stating that "courts have
recognized that §362(a) cannot stay actions specifically authorized elsewhere in the bankruptcy code")
(citation omitted), *cert. denied* 502 U.S 148 (1992)..

or Mrs. Newcomer to collect on the Note and threatened to foreclose on the Property during the pendency of the bankruptcy case, and that these calls violated the automatic stay.  At argument on the summary judgment motion, Plaintiff contended that the calls and letters violate §362(a)(3), (4) and (5).[5]

These statutory provisions address property of the estate, and direct stays of any actions to obtain possession or to exercise control over property of the estate, or to create, perfect or enforce a lien against property of the estate.  They operate to stay any action "whether against the debtor or third-parties" to obtain possession or to exercise control over property of the debtor.  *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986) (emphasis in original).  Accordingly, the Court must determine whether the letters relied on by Plaintiff constitute an action to obtain possession or to exercise control over property of the estate, or to enforce a lien against property of the estate.

In doing so, however, the Court must keep in mind the distinction between actions taken by Defendant against Mrs. Newcomer based on her personal liability, and actions taken by Defendant to pursue property of the estate. *See also*, Section B, above. Plaintiff is not obligated on the Note and Mrs. Newcomer was not a debtor in bankruptcy.  The automatic stay did not prevent efforts by Defendant to collect against Mrs. Newcomer on her personal liability under the Note.  It is only if or when Defendant sought to obtain possession, exercise control, or enforce a lien against the Property, which was property of the estate, that Defendant would run afoul of the automatic stay.

---

[5] Those sections provide that the filing of a bankruptcy petition operates as a stay of "(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; (4) any act to create,  perfect, or enforce any lien against property of the estate; (5) [and] any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title[.]"  11 U.S.C. §362(a)(3), (4) and (5).

The protections afforded by the Bankruptcy Code render this distinction less consequential in the usual Chapter 13 case involving spouses. It is a relatively rare case where, as here, spouses jointly own their residence but only one spouse is obligated on the deed of trust and attendant note. It is rarer still where, in such a circumstance, the party who is not obligated on the deed of trust or note is the only spouse who files for bankruptcy protection. Here, if the Plaintiff were obligated on the Note, then undoubtedly the co-debtor stay of §1301 would have prevented Defendant from taking any collection efforts against Mrs. Newcomer personally. Moreover, if Mrs. Newcomer had filed for Chapter 13 protection, instead of or along with Plaintiff, the automatic stay of §362 likewise would have prevented Defendant from taking any collection actions against her. But under the unique facts of this case, the automatic stay of §362 did not prohibit Defendant from taking collection actions against Mrs. Newcomer on her personal liability; it did, however, prohibit Defendant from taking actions against property of the estate.

The complained-of letters are as follows: a "Validation of Debt Notice" sent to Louise Newcomer dated February 23, 2004 (the "Validation Notice"); a "Notice of Default and Intent to Accelerate" sent to Louise Newcomer dated March 11, 2004 (the "March 11 Acceleration Letter") and a "Notice of Default and Intent to Accelerate" sent to Louise Newcomer dated March 12, 2004 (the "March 12 Acceleration Letter"). *See* Plaintiffs' Motion, Exhibits 12, 13 and 14. The March 11 Acceleration Letter and the March 12 Acceleration Letter are identical with the exception of the amount necessary to bring the loan current: the amounts are $7173.17, and $6381.24, respectively.

17

The Validation Notice states, in relevant part, that "Litton is writing to you in an attempt to collect the Debt"; that the "current amount of the Debt is $84,953.95"; that "[u]nless you notify Litton in writing within thirty (30) days after receipt of this notice that you dispute the validity of the Debt, or portion thereof, Litton will assume the Debt to be valid"; and that "[i]f you are not obligated on the debt, you are a debtor in bankruptcy, or the debt has been discharged in a bankruptcy proceeding, the Servicer is not attempting to collect from you personally.  You are being sent this notice as a courtesy because your interest in the real estate may be affected."   Nowhere in the Validation Notice does Defendant state that it is taking or threatening any action against the Property.  The Court concludes that the Validation Notice is not an action to obtain possession, exercise control over, or enforce a lien against property of the estate.  The Validation Notice, therefore, is not a violation of the automatic stay of §362(a)(3), (4) or (5).

The language in the March 11 Acceleration Letter and the March 12 Acceleration Letter is another matter, however.  In relevant part, they state:

> 1.     The mortgage loan associated with the above Deed of Trust/Mortgage is in default for failure to pay amounts that are due and owing.
>
> *   *   *
>
> 3.  If you have not cured the default within forty five (45) days of this notice, Litton will accelerate the maturity date of the Note and declare all amounts due under the Note immediately due and payable.  Your property that is collateral for the Note may then be scheduled for foreclosure in accordance with the terms of the Deed of Trust/Mortgage and applicable state law.
>
> *   *   *
>
> 5.  Upon acceleration of your Note, Litton will refer the property for foreclosure.

March 11 Acceleration Letter and March 12 Acceleration Letter, p. 1, ¶¶ 1, 3 and 5.  Although addressed only to Mrs. Newcomer, a non-debtor, they were mailed to her at the Property, where Plaintiff also resided.  The threat to schedule for foreclosure the "property that is collateral for the Note" is a threat to foreclose on property of the estate.  By sending these letters, Defendant violated the automatic stay imposed by §362(a)(3), (4) and  (5).  Accordingly, Defendant's Motion for Summary Judgment on Count 1 will be denied, and Plaintiff's Motion for Summary Judgment on Count 1 will be granted as to the March 11 Acceleration Letter and the March 12 Acceleration Letter,  and denied as to the Validation Notice.

"To prove a willful violation of the stay, it is not necessary to show that the creditor had the specific intent to violate the stay.  It is sufficient to show that the party knew of the existence of the bankruptcy case and that the creditor's actions were intentional."  *In re Clayton*, 235 B.R. 801, 807 (Bkrtcy.M.D.N.C. 1998) (citations omitted).  It is undisputed that, by March 11, 2004, Defendant was aware of Plaintiff's bankruptcy case and that the Property was property of the estate.  Defendant's actions in sending the March 11 Acceleration Letter and the March 12 Acceleration Letter were sufficient to constitute a willful violation of the automatic stay.

Plaintiff seeks actual and punitive damages under §362(k).  The issue of damages will be resolved at trial.  The Court finds that there are genuine issues of material which cannot be resolved at the summary judgment stage.

Plaintiff also contends that Defendant's phone calls to Mrs. Newcomer or him constituted violations of the automatic stay for the same reasons that the letters violated

the stay.  Internal documents obtained from the Defendant in discovery reflect that
Defendant's representatives made numerous phone calls to Plaintiffs' home during
February and March 2004, soon after servicing on the loan was transferred to Defendant.

However, with regard to Mrs. Newcomer, she testified that she could recall only
one conversation with a representative of Defendant, and that occurred perhaps a week
after March 13, 2007.  Louise Newcomer Deposition Transcript, December 23, 2008, p.
95.  She does not recall what Defendant's representative said to her in that conversation.
*Id.* at 97.  Mrs. Newcomer told the representative "this was like the third time that this
has happened and it was supposed to have been taken care of previously.  And I don't
remember what else was said."  *Id*.  This phone conversation does not constitute a
violation of the automatic stay for two reasons: (1) As stated above, the Chapter 13
trustee filed a Notice of Plan Completion in October 2006, Plaintiff received his
discharge on October 19, 2006, and the bankruptcy case was closed on January 16, 2007.
*See* Docket Nos. 32, 33 and 36 in Case No 02-13178.  Thus, the phone call occurred after
the case was closed and the Property was no longer property of the estate;[6] (2) Because
Mrs. Newcomer could not remember the substance of the call, Plaintiff cannot establish
that the call was an act against property of the estate, as opposed to an attempt to collect
from Mrs. Newcomer on her personal liability.  Accordingly, the Court will grant
Defendant's motion for summary judgment to the extent Count 1 is based on calls to Mrs.
Newcomer during the bankruptcy case.

The matter is not as clear with respect to Defendant's phone calls to Plaintiff.  The
excerpts of the deposition transcripts submitted with the summary judgment motions

---

[6] The stay of actions against property of the estate terminates when such property is no longer property of
the estate. 11 U.S.C. §362(c)(1).  In a chapter 13 case, property ceases to be property of the estate when the
case is closed.  11 U.S.C. §1306(a).

reflect that Plaintiff had numerous conversations with Defendant's representatives.  The

excerpts do not indicate what was discussed other than "generally the conversations

would have been about payments."  Kevin Newcomer Deposition Transcript, December

22, 2009 [*sic*], p. 69.[7]  The nature and content of these calls is not clear from the record,

including whether Defendant made calls to Plaintiff to collect funds that were due under

the Plan or the Note.  A call directly to Plaintiff, a debtor in bankruptcy, obviously would

implicate the automatic stay much more broadly than a call to Mrs. Newcomer.

Accordingly, whether Defendant violated the automatic stay by making collection calls to

Plaintiff must be resolved at trial.

### E.  *Counts 2 and 3 – Alleged Violations of §§1327 and 1328*

Although they are based on two separate provisions of the Bankruptcy Code – 11

U.S.C. §§ 1327 and 1328 – the essential factual allegation underlying both counts is the

same:  Plaintiff alleges that Defendant misapplied the payments it received from the

Chapter 13 Trustee under the Plan and also misapplied the payments it received directly

from the Plaintiffs on the Note.  *See* Plaintiffs' Motion, p. 23; Plaintiffs' Opposition, pp.

21-22.

The current record before the Court does not allow for an award of summary

judgment to either party[8] with regard to Counts 2 and 3.  A genuine issue of material fact

exists as to, among other things, exactly how Defendant (and, apparently relevant to some

degree, Homecomings before Defendant) specifically credited payments it received

during the pendency of Plaintiff's bankruptcy case.  And after that issue is explained with

---

[7] The Debtor testified that Defendant never made any physical threats, threatened criminal prosecution, threatened to call neighbors, relatives or the Debtor's employer, or made similar types of "dunning" threats. *See id.* at 71-73.

[8] Except, of course, for a grant of summary judgment with regard to Mrs. Newcomer, based on her lack of standing, as already discussed above.

sufficient clarity, there also remains the most important issue: whether the application (or misapplication) of the payments Defendant received from the Trustee and Plaintiff resulted in unwarranted late fees or other unfounded charges, such as would constitute actual damages. The parties dispute these points, and they are not susceptible of resolution on summary judgment.

The gravamen of Defendant's legal argument allegedly supporting its request for summary judgment on Counts 2 and 3 is that there is no private cause of action under §§1327 and 1328. *See* Defendant's Memo, pp. 33-35; Defendant's Opposition, pp. 22-23. This argument alone is fatal to Defendant's request. Plaintiffs do not, in fact, allege a direct cause of action under these statutory provisions; rather, Plaintiffs allege that Defendant's failure to comply with the operative conditions and limitations that arise as a result of a court's entry of orders confirming a Chapter 13 plan and granting a Chapter 13 debtor a discharge are redressable pursuant to 11 U.S.C. §105. *See* Amended Complaint, p. 12, ¶ 76 and p. 13, ¶ 81.

Alternatively, conceding that Plaintiffs actually rely on §105, Defendant argues that §105 does not authorize the creation of substantive rights. *See* Defendant's Memo, pp. 35-36; Defendant's Opposition, pp. 23-24. Again, Defendant's argument is a straw man. Plaintiffs do not seek to <u>create</u> substantive rights, but, rather, to <u>enforce</u> substantive rights arising from the statutory directives and implications of §§ 1327 and 1328. *See* Amended Complaint, p. 12, ¶ 76 and p. 13, ¶ 81.

The Court is well aware that "while the equitable powers emanating from §105(a) are quite important in the general bankruptcy scheme, these equitable powers are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes

and rules." *Committee of Equity Security Holders v. Mabey,* 832 F.2d 299, 303 (4th Cir. 1987); *see also Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206 (1988) (under §105, "a court may exercise its equitable power only as a means to fulfill some specific Code provision").  But the Court is "well within its authority if it exercises its equitable powers to enforce a specific code provision [and] may invoke §105(a) if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the Code." *Bessette v. Avco. Financial Services, Inc.*, 230 F.3d 439, 444-445 (1ˢᵗ Cir. 2000) (citations omitted), *cert. denied sub nom. Textron Funding Corp. v. Bessette*, 532 U.S. 1048 (2001).  The plain language of §105(a) authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate," and the range of remedies available to the Court to address a party's failure to comply with provisions of the Code is extremely broad.  "[S]o long as the court acts consistent with the Code and does not alter the Code's distribution of other substantive rights," *Bessette*, 230 F.3d at 445, the authority of the Court under §105(a) "would include any remedy available in a private cause of action." *In re Rodriguez*, 396 B.R. 436, 458 (Bkrtcy. S.D.Tex. 2008).  *See Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 375 (2007) (citing "the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate 'to prevent an abuse of process' described in § 105(a) of the Code").  *See also* 2 *Collier on Bankruptcy* (15ᵗʰ Ed. Revised 2009), ¶ 105.01:  "The basic purpose of section 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction."

Defendant's argument would have it that a party aggrieved by a creditor's failure to comply with a court's orders confirming a Chapter 13 plan and granting a discharge

has little or no recourse.  However, Code provisions such as §§1327 and 1328 "create rights *and* duties" for parties in bankruptcy cases.  *In re Tate*, 253 B.R. 653, 669 (Bkrtcy.W.D.N.C. 2000).  "A prohibition against creating new substantive rights is not a direction to gut §105 in a manner that precludes *enforcement* of substantive rights. Allowing debtors to seek damages for violations of Court orders confirming chapter 13 plans and the Bankruptcy Code provisions implemented by the Court *enforces* the rights."  *Rodriguez*, 396 B.R. at 460.

The Court is also aware that some courts have concluded that § 105 may not be used to enforce code provisions other than the automatic stay.  *See, e.g., Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502 (9th Cir. 2002) and *Pertuso v. Ford Motor Credit Co.,* 233 F.3d 417 (6th Cir. 2000) (debtors claiming violation of the discharge injunction can seek relief only through a contempt proceeding, not a private cause of action seeking damages).  Those courts assumed that §105 authority is limited to civil contempt remedies, an assumption that this Court considers to be inconsistent with the plain language of § 105 and the Supreme Court's explication in the *Marrama* decision of the broad scope of authority under §105(a).

Finally, this Court's ruling is consistent with the Fourth Circuit's view of chapter 13 plans.  The Fourth Circuit has recognized that a Chapter 13 plan is a "new and binding contract, sanctioned by the court, between the debtors and their pre-confirmation creditors."  *In re Murphy*, 474 F.3d 143, 148 (4th Cir. 2007) (quotations omitted.)   As the Court further recognized, Section 1327 expressly binds the debtor and each creditor to the confirmed plan, whether or not the creditor objected to, accepted, or rejected the plan.  *Id*. And "[l]ike other contracts, a confirmed Chapter 13 plan is subject to modification."  *Id*.

Also "like other contracts," a party who is subjected to a breach should have recourse to the courts to redress that breach. That is exactly what Plaintiff seeks in this case. The Court concludes, therefore, that the Amended Complaint properly states a cause of action in Counts 2 and 3. The question remains whether Defendant, in fact, breached the "contract" embodied in the Plan or otherwise violated §§1327 and 1328. The Court concludes that there is a genuine issue of material fact remaining as to that question, which must be resolved at trial. Accordingly, Defendant's Motion will be denied as to these two counts. Plaintiff's Motion in this regard, which requests summary judgment only on Count 2, will also be denied, for the same reason.

### F.    Count 4 – Intentional Infliction of Emotional Distress [9]

The essence of Plaintiff's intentional infliction of emotional distress claim is that Defendant, with reckless disregard for its obligations under the Plan and the Bankruptcy Code, maintained an accounting system that was incapable of properly applying payments in a Chapter 13 case. Plaintiff contends that Defendant's accounting system required it to apply every payment received – whether it was a post-petition loan payment made directly by the Newcomers or a prepetition arrearage payment made by the trustee under the plan – to the earliest scheduled payment due. According to Plaintiff, while he and Mrs. Newcomer were making timely post-petition loan payments, Defendant was crediting those funds as if they were intended for payments missed by Plaintiffs prepetition. Thus, according to Plaintiffs, Defendant was incapable of determining

---

[9] In its ruling on Defendant's Motion to Dismiss the initial Complaint, the Court, in relevant part, dismissed Plaintiffs' cause of action for intentional infliction of emotional distress. *See* November 19, 2007 Order (Docket No. 37) dismissing Count IX of the initial Complaint (Intentional Infliction of Emotional Distress) without prejudice, and giving Plaintiffs the opportunity to "amend the Complaint to make more particular allegations with respect to Count IX." Plaintiffs included a revised claim for intentional infliction of emotional distress as Count 4 of the Amended Complaint, and Defendant did not file a motion to dismiss the amended Count 4.

25

whether they remained current on post-petition payments, and, among other things, improperly charged late fees and claimed Plaintiffs were in default under the Plan and Note. Defendant counters that it took substantial steps, by auditing the account and otherwise, to assure the accuracy of the application of loan payments. Plaintiff contends that Defendant's actions caused them severe emotional distress, and that Defendant's actions otherwise meet the elements of a claim of intentional infliction of emotional distress under Maryland law.

Intentional infliction of emotional distress was first established as an independent tort under Maryland law in *Harris v. Jones*, 281 Md. 560 (1977), which set forth the four elements that must be satisfied. Those elements are: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; (4) the emotional distress must be severe. *Id*. at 566. Each of these elements must be pled and proved with specificity, and a deficiency as to any one of them is fatal to the claim. *See Foor v. Juvenile Services Administration*, 78 Md. App. 151, 175, *cert. denied* 316 Md. 364 (1989).

The Court concludes that Plaintiff's emotional distress, as described by him in his deposition and with no further supplementation in the record, does not satisfy the level of severity required as a matter of Maryland law. Because a deficiency as to any one element is fatal to the claim, *Foor, supra*, 78 Md.App. at 175, the Court need not address any other elements once one is found to be unsatisfied.[10] Concluding that Plaintiff's

---

[10] Intentional infliction of emotional distress claims are "rarely viable in a case brought under Maryland law." *Takacs v. Flore*, 473 F. Supp.2d 647, 652 (D. Md. 2007) (citations omitted). Fifteen years after intentional infliction of emotional distress was established as an independent tort under Maryland law, the Maryland Court of Appeals noted that it had "upheld claims for intentional infliction of emotional distress

allegations are insufficient as a matter of law with regard to the severity element of this claim, the Court will grant summary judgment to Defendant on Count 4 with regard to Plaintiff.  The Court now turns to a discussion of the bases for this conclusion.

The severity element requires proof of emotional distress so severe that the plaintiff is "unable, even temporarily, to carry on to some degree with the daily routine of her life."  *Moniodis v. Cook*, 64 Md. App.1, 15-16, *cert. denied* 304 Md. 631 (1985). Stated otherwise, the severity of the emotional distress must be "of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it."  *Gallagher v. Bituminous Fire and Marine Insurance Co.*, 303 Md. 201, 211 (1985) (citation omitted).

Examples of alleged emotional distress held to be legally insufficient include the following:  In *Caldor, Inc. v. Bowden,* 330 Md. 632, 642-45 (1993), evidence that a sixteen-year-old store employee – who was falsely imprisoned for four hours, coerced into signing a confession that he had stolen money, and maliciously prosecuted – went to a psychologist one time, felt insecure and incapable of trusting others, and suffered weight loss was held insufficient to show severe distress.  In *Harris, supra*, 281 Md. at 572, it was proved that the plaintiff's supervisor mimicked, harassed and embarrassed the

---

only three times and only in cases which involved truly egregious acts." *Batson v. Shiflett*, 325 Md. 684, 734-735 (1992).  The conduct found to be sufficiently egregious in those cases was as follows:  a psychologist had sexual relations with the plaintiff's wife during the time when he was treating the couple as their marriage counselor; a physician did not tell a nurse with whom he had sexual intercourse that he had herpes; and a worker's compensation insurer's "sole purpose" in insisting that a claimant submit to psychiatric examination was to harass her and force her to abandon her claim or to commit suicide.  *See Batson*, 325 Md. at 734 (citing cases). The requirement that the conduct must be extreme and outrageous, for example, is satisfied "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harris*, 281 Md. at 567 (citing Restatement (Second) of Torts).  The Court has serious misgivings whether the "extreme and outrageous" element is met on this record, but need not address that element here.

plaintiff about his speech defect for five years, but evidence that the plaintiff was humiliated and his speech defect was exacerbated were held insufficient to show severe distress.  In *Takacs, supra*, 473 F.Supp.2d at 652, the plaintiff's emotional distress claim was dismissed even though she alleged "debilitating conditions, including severe depression, anxiety, sleeplessness, headaches and [being] sick to her stomach, [because] she does not allege that she has been unable to function on a daily basis, even if her functioning is presumably affected by her psychological and physical distress."  And in *Leese v. Baltimore County,* 64 Md.App. 442, 472, *cert. denied* 305 Md. 106 (1985), the plaintiff's allegations that he suffered "physical pain, emotional suffering, and great mental anguish" failed to state a claim because these allegations fell short of the "evidentiary particulars" required.

Here, Plaintiff's deposition establishes that he has not suffered the level of emotional distress that is actionable in Maryland.  He testified as follows:

> I have lost sleep.  I have suffered a great deal of anxiety.  I have been irritable with people not related to the case.  It has had a detrimental impact on my marriage relationship.  It has challenged my self esteem as I have not been able to repay debts that I otherwise would be repaying.  I've had to work harder than I might otherwise have had to work.  And I am currently seeing a doctor, Dr. Robert Madsen.

Deposition of Kevin Newcomer, December 22, 2009 [*sic*], p. 74.  He testified that this has been a grueling emotional experience and a source of great irritation. *Id*. at 78. Roughly five to ten times a month he loses sleep worrying about this issue. *Id*. at 77.  He testified that the detrimental impact on his marriage is evidenced by the arguments he has had with his wife over finances.  *Id*. at 81-84.

Plaintiff testified, however, that he has not missed any work as a result of Defendant's actions, other than for time spent directly related to this litigation for

depositions, court hearings and a mediation session.  *Id*. at 75.  The only example he could give of being irritable with people is that at times he has been irritable with customers at his job.  *Id*. at 79-80.  Arguing over finances with his wife has "made life difficult."  *Id*. at 82.  He did not begin seeing Dr. Madsen in April 2007 (*id*. at 84), more than three years after the alleged violations of the automatic stay (which are a substantial component of his Count 4 claim), and six months after the Trustee filed the Notice of Completion of Plan Payments (*see* Docket No. 36 in Case No. 02-13178).  His counsel "very well could have suggested" he see a doctor.[11]  *Id*. at 139. Dr. Madsen has not prescribed any medications for him.  *Id*. at  86.

Even assuming that all of Plaintiff's troubles are attributable to Defendant, and drawing all inferences in the light most favorable to him, as the Court must on summary judgment, no reasonable factfinder could conclude that Plaintiff's symptoms satisfy the level of severity needed to establish a claim of emotional distress.  He clearly has been able to function on a daily basis, and did not testify to the contrary.  While he has been irritable, has lost sleep, has been anxious about his finances, and has argued with his wife, he nevertheless has not lost time from work, can point to very few instances of irritability, and does not require medication to treat his anxiety.

The Court does not mean to belittle Plaintiff's symptoms.  These symptoms, however, are not as severe as many of the fact patterns that exist in the cases cited above, cases in which more severe symptoms were determined to be insufficient to establish the necessary level of severity under Maryland law.  It certainly cannot be said that Plaintiff

---

[11] Although the adversary proceeding was filed in June 2007, as stated in the Material Facts Not in Dispute, this action has its genesis in Plaintiff's motion to reopen the case, filed in February 2007, to allow Plaintiff to file a contempt motion against Defendant on grounds similar to the claims in this adversary proceeding. In the contempt motion, which was filed as an exhibit to the motion to reopen the bankruptcy case and later filed as a separate motion (*see* Docket Nos. 38-1 and 41 in Case No. 02-13178), Plaintiff alleged that he and Mrs. Newcomer suffered severe emotional distress as a result of Defendant's actions.

either "has been unable, even temporarily, to carry on to some degree with the daily routine of her life," *Moniodis,* 64 Md.App. at 15-16, or that he has suffered emotional distress "of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it. " *Gallagher*, 303 Md. at 211 (quotations omitted).  Therefore, the Court will grant Defendant's motion for summary judgment on Count 4.

## CONCLUSION

For the foregoing reasons, the Court will DENY Defendant's motion on the grounds that any counts are barred by the statute of limitations; GRANT Defendant's motion as to Mrs. Newcomer on all four counts based on her lack of standing; GRANT Plaintiff's motion on Count 1 for violation of the automatic stay resulting from Defendant's issuance of the March 11 Acceleration Letter and  the March 12 Acceleration Letter (as defined herein), with the issue of damages reserved for trial; GRANT Defendant's motion on Count 1 for violation of the automatic stay resulting from Defendant's issuance of the Validation Notice (as defined herein); GRANT Defendant's motion on Count 1 to the extent it seeks summary judgment that Defendant's phone calls to Mrs. Newcomer did not violate the automatic stay; DENY both Plaintiff's and Defendant's motions on Count 1 to the extent they seek summary judgment that Defendant's phone calls to Plaintiff (as opposed to Mrs. Newcomer) did or did not, as the case may be, violate the automatic stay, which claims will be determined at trial; DENY both Plaintiff's and Defendant's motions as to Count 2; DENY both Plaintiff's and

Defendant's motions as to Count 3; and GRANT Defendant's motion for summary

judgment on Count 4.



**Copies to:**

Matthew G. Summers, Esq.
300 E. Lombard St.
18th Floor
Baltimore, MD 21202

Homecomings Financial, LLC
c/o J. Matthew Goodin, Esq.
Locke Lord Bissell & Liddell, LLP
111 South Wacker Drive
Chicago, IL 60606

Laura J. Margulies, Esq.
Laura Margulies & Associates, LLC
6205 Executive Blvd.
Rockville, MD 20852

Brett Weiss, Esq.
Joseph Creed, Esq.
Joseph, Greenwald and Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770

Kevin and Louise Newcomer
2617 Newton Street
Wheaton, MD 20902

**END OF OPINION**
