Date signed March 31, 2012



**THOMAS J. CATLIOTA**
**U. S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Kevin K. Newcomer, | * | Case No. 02-13178-TJC |
| Debtor. | * | Chapter 13 |
| | * | |
| * * * * * * | * * * * * | |
| | * | |
| Kevin K. Newcomer, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Adv. Case No. 07-479 |
| v. | * | |
| | * | |
| Litton Loan Servicing, L.P., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |
| * * * * * * | * * * * * * | |

## MEMORANDUM OF DECISION

Before the Court is the application of Laura Marguilies & Associates, LLC, Brett Weiss, P.C., Joseph, Greenwald & Laake, P.A., and Joseph M. Creed, Esquire, collectively Counsel to the Debtor/Plaintiff (collectively the "Applicants") for allowance of compensation for services rendered in representing the Debtor Kevin Newcomer (the

1

"Plaintiff") in the action against Litton Loan Servicing, LP ("Defendant") (the "Application") (Docket No. 242). Defendant opposes the Application (Docket No. 252). For the reasons set forth herein the Court will deny the Application to the extent it seeks an award of fees and expenses to be paid by Defendant.

*History of the bankruptcy case and adversary proceeding*

The bankruptcy commenced on March 13, 2002 when Plaintiff filed for relief under chapter 13 of the Bankruptcy Code. Plaintiff's chapter 13 plan was confirmed by order entered on October 22, 2002. Thereafter, on October 19, 2006, Plaintiff received his chapter 13 discharge, and the case was closed on January 16, 2007.

The Plaintiff filed a motion to reopen the bankruptcy case on February 28, 2007 to file a motion to hold Defendant in contempt for violating the discharge injunction of §524. The case was reopened on March 12, 2007 and the Plaintiff filed the contempt motion on March 13, 2007. The contempt motion was withdrawn on June 19, 2007 and the Plaintiff filed the instant adversary proceeding.

The action stems from a residential real estate loan obtained by Plaintiff's spouse, Louise Mae Newcomer ("Louise"), in 1996 in the amount of $89,350, secured by a deed of trust against 2617 Newton Street, Wheaton, MD. Plaintiff is not a party to the note or deed of trust, and did not own an interest in the property at the time Louise obtained the loan. He acquired an interest in the property in 2002, when Louise executed a quitclaim deed transferring the property to herself and Plaintiff as tenants by the entireties. Louise did not join in the petition nor was she a debtor at any time after the Plaintiff commenced his case.

The original complaint brought ten counts for relief against both Defendant and Homecomings Financial, LLC ("Homecomings"). Plaintiff and Louise sought $1.5 million in actual and punitive damages against Defendant. Complaint at 12-14 (Docket No. 41). On summary judgment, the Court, dismissed Count 4 (intentional infliction of emotional distress), dismissed all claims brought by Louise for lack of standing, and resolved other issues. *Newcomer v. Litton Loan Servicing, L.P. (In re Newcomer)*, 416 B.R. 166 (Bankr. D. Md. 2009). Following the Court's ruling on summary judgment, the remaining counts in the amended complaint asserted claims for violation of the automatic stay of §362 of the Bankruptcy Code (Count 1); violation of §1327 and the confirmed plan (Count 2); and violation of §1328 (Count 3).[1] Following a three-day trial, the Court concluded that Homecomings, which serviced the loan before Defendant:

> violated the automatic stay and the terms of the plan and §1327 of the Bankruptcy Code by requiring Plaintiff (and his wife) to pay a prepetition obligation – *viz.*, the escrow deficiency that existed as of the petition date – as a condition of keeping the loan current post-petition. Homecomings also included most, if not all, of the prepetition escrow deficiency in its proof of claim and recovered those amounts through Plaintiff's plan payments. The violation, therefore, is particularly egregious because Homecomings not only improperly collected the prepetition obligation from post-petition payments, it collected it twice.

*Newcomer v. Litton Loan Servicing, L.P. (In re Newcomer)*, 438 B.R. 527, 530 (Bankr. D. Md. 2010).

However, Plaintiff had settled with Homecomings, and it was no longer a party to the action. As to the Defendant, although the Court initially granted summary judgment in favor of Plaintiff and held that Defendant willfully violated the automatic stay, the Court granted the Defendant's motion for reconsideration. *Newcomer*, 438 B.R. at 539-

---

[1] As Plaintiff's case was filed in 2002, all references to statutory provisions of the Bankruptcy Code are to the 2002 version of the Code.

3

40. In so granting reconsideration, the Court found that although there was a technical violation of the automatic stay, that violation by the Defendant was not "willful" and the Court would not award damages for the violation under the circumstances. *Id.* at 539.[2]

As to the violation of §1327, the Court concluded that Homecoming's actions violated the confirmed chapter 13 plan. The Plaintiff sought emotional distress damages and punitive damages from the Defendant for his alleged inability to refinance the loan. However, the Court found that it was Homecomings, not the Defendant, who sought to double collect the prepetition escrow deficiency and collect a prepetition obligation post-petition and who notified the Newcomers of the incorrect amount due on the loan. The Court found that "[t]here is no basis to impose…liability on Defendant, as a subsequent loan servicer, for Homecomings' actions. Assuming the types of damages Plaintiff seeks are available for a violation of a Plan, they would have to be imposed based on Defendant's, not Homecomings', actions." *Newcomer,* 438 B.R. at 544.

The Court previously ruled on summary judgment that §105 of the Code empowers the Court to enforce a party's substantive rights under §1327. *Id.* After trial, the Court found that although Plaintiff was "not entitled to the broad affirmative relief" sought, he was entitled to a recalculation of the amount due on the loan by removing any post-petition obligation to pay the prepetition escrow deficiency. *Id.* This recovery was declaratory in nature and the Defendant made a $2,823.82 adjustment to Mrs. Newcomer's loan, and waived certain late fees totaling no more than $3,237.20. The Plaintiff had also indicated at trial that he intended to file a petition for fees and costs, if the Court found in his favor. *Id.* The Court noted in its Memorandum Opinion that any such petition must focus "specifically on Defendant's, rather than Homecomings',

---

[2] The primary violations of the stay were "robocalls" to Plaintiff's home which no one answered.

4

conduct." *Id*. As to the final count, the Court held that Defendant did not violate §1328(a).

*The Application*

The Applicants seek a total of $277,394.30 which is comprised of attorneys' fees in the amount of $255,394.30 and expenses of $23,399.30 of which $500 has been paid. The Application breaks down the legal services rendered into six categories. They are: (1) for filing the contempt motion, the Applicants billed 29.17 hours of attorney time at $350 per hour for a total of $10,209.50; (2) for discovery and the complaint, the Applicants billed 314.62 hours of attorney time at $350 per hour for a total of $110,117 and the Applicants billed 17.80 hours of law clerk time at $100 per hour for a total of $1,780; (3) for mediation, the Applicants billed 27.08 hours at $350 per hour for a total of $9,478.00; (4) for trial, the Applicants billed 333.53 attorney hours at $350 per hour for a total of $116,735.50; (5) for preparation of the Application, the Applicants billed 20.5 attorney hours at $350 per hour for a total of $7,175.00.

*Discussion*

The Application is brought purportedly under 11 U.S.C. §§ 330(a), 507(a)(2), and 503(b). These statutory provisions govern the allowance of fees and expenses to professionals employed by the estate. Certainly the Applicants diligently and vigorously prosecuted this adversary proceeding and are entitled to a reasonable fee for services rendered and expenses incurred. However, as the Court understands the Applicants' request, a discussion of the law surrounding a fee application brought under §330 is not warranted. The dispute between the parties is whether or not Defendant can be held responsible for the Plaintiff's attorneys' fees. The Court addresses that issue below.

5

Generally, "absent explicit congressional authorization", litigants must pay their own attorneys' fees. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975). The presumption underlying the American Rule is that parties bear their own legal costs, win or lose. *MR Crescent City, LLC v. Draper (In re Crescent City Estates, LLC),* 588 F.3d 822, 825 (4th Cir. 2009) (citations omitted). As the American Rule is "deeply rooted" in common law, if Congress wishes to overcome this presumption it must do so clearly and directly. *Id*. Congress has not "extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted. What Congress has done, however, while fully recognizing and accepting the general rule, is to make specific and explicit provisions for the allowance of attorneys' fees under selected statutes granting or protecting various federal right. *Alyeska Pipeline*, 421 U.S. at 260

The Applicants rely on a line of cases, discussed further below, that stand for the proposition that attorneys' fees may be awarded pursuant to §105 of the Code where a bankruptcy court finds a party in civil contempt, including civil contempt for failure to comply with a plan confirmation order. To establish civil contempt, the Fourth Circuit has held that each of the following elements must be shown by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) ... that the decree was in the movant's "favor"; (3) ... that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) ... that [the] movant suffered harm as a result.

6

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (*quoting Colonial Williamsburg Found. v. The Kittinger Co.,* 792 F. Supp. 1397, 1405-6 (E.D. Va. 1992), *aff'd,* 38 F.3d 133, 136 (4th Cir. 1994)).

Here, the Court did not find the Defendant to be in civil contempt. The Court found that Homecomings violated the automatic stay, the terms of the confirmed plan and §1327 by (1) requiring Plaintiff and Louise to pay a pre-petition obligation as a condition of keeping the loan current post-petition; and (2) by recovering the prepetition escrow shortage twice through plan payments and an increase in the monthly post-petition payments. But Homecomings was no longer a party to the action, and the Court concluded that there was no basis to impose affirmative liability on Defendant, as a subsequent loan servicer, for Homecomings' actions. *Newcomer,* 438 B.R. at 544.

In its Memorandum Opinion on summary judgment, this Court rejected a line of cases holding that a bankruptcy court's power under §105 is limited to civil contempt remedies. *Newcomer*, 416 B.R. at 182 ("Those courts assumed that §105 authority is limited to civil contempt remedies, an assumption that this Court considers to be inconsistent with the plain language of §105 and the Supreme Court's explication in the *Marrama* decision of the broad scope of authority under §105(a)"). Accordingly, the Court concluded that it could award relief even in the absence of civil contempt, and did so by ordering a recalculation of the loan amount due. But a finding of contempt is the lynchpin for Applicants' request for a fee award against Defendant. Thus while the absence of contempt by Defendant was not a bar to awarding Plaintiff relief, it appears to be fatal to Applicants' effort to impose a fee award against Defendant.

In each case cited by Applicants, the court awarded attorney fees for contempt based on actions by the very party against whom the award was made. Thus the defendant in each case is the party that committed the egregious act. In no case did the court grant fees against a subsequent party based on a prior party's conduct, and certainly in no case was the fee award granted against a subsequent agent based on a prior agent's conduct.

Thus in *Florida Dept. of Revenue v. Rodriquez (In re Rodriguez)*, 367 Fed. Appx. 25 (11th Cir. 2012), the Eleventh Circuit upheld an award of fees for contempt for violating a confirmed plan against the Florida department of revenue, in its capacity as a child support collection agency, for sending letters to the debtor during his bankruptcy. *Id.* at 26. The district court found that the state violated the terms of the confirmed plan and thus was in contempt of the bankruptcy court's order, and the Eleventh Circuit affirmed. The award was upheld expressly on the bankruptcy court's finding of contempt against Florida. *Id.* at 30.

Similarly, *Payne v. Mortgage Electronic Registration Systems, Inc., et al.,* (*In re Payne)*, 387 B.R. 614 (Bankr. D. Kan. 2008), involved claims for violations of the automatic stay and for violations of the Real Estate Settlement Procedures Act (RESPA). In *Payne*, the loan servicer, Everhome Mortgage Company ("Everhome"), failed to timely and properly account for payments, misapplied and incorrectly processed debtors' payments and allowed debtors' escrow deficiency and other post petition charges to grow without notice to debtors. The bankruptcy court concluded that Everhome violated the confirmation order, the automatic stay, and RESPA. Both RESPA and the automatic stay provisions of §362 provide that individuals may recover reasonable attorney fees when a

violation occurs. The Court in *Payne*, reserved judgment on the award of attorney's fees and costs until it had the ability to review the fee application. Here, the Court determined that there was no willful violation of the automatic stay by Defendant.

In *Boday v. Franklin Credit Management Corporation (In re Boday)*, 397 B.R. 846 (N.D. Ohio 2008) there was no reference to attorneys fees and the issue of damages was not yet before the court. *Boday*, 397 B.R. at 852. The court held that the defendant, who was the current holder of the loan, improperly accounted for payments that the debtors made to service their mortgage loan and required the defendant to adjust its records. *Id.* at 851. However, as the issue of damages was left for another day, the Court finds this case to be inapposite.

Finally, in *Workman v. GMAC Mortgage LLC, (In re Workman)*, 392 B.R. 189 (Bankr. D. S.C. 2007), the court recognized that §105 of the Code provides a remedy for violations of the discharge injunction and/or violations of a confirmed plan. *Id.* at 194. In granting compensatory and punitive damages along with attorneys' fees, the court relied on Fourth Circuit case law that §105(a) allows courts to sanction parties for civil contempt. *Id. citing In re Walters*, 868 F.2d. 665, 669 (4th Cir. 1989). In *Workman*, one day after the discharge order was entered, GMAC sent the debtors a letter notifying them they were five months past due on their mortgage payments. The debtors then filed their complaint seeking to hold GMAC in civil contempt. GMAC failed to respond and default judgment was entered against them. The Court awarded $22,400 in compensatory damages, punitive damages and legal fees based on GMAC's failure "to abide by its own stipulation, obey orders of this Court, or participate in this adversary proceeding after

being properly served." *Id*. at 196.  This case provides no support for the attorney fees claim against Defendant here.

*Conclusion*

Although an award of attorneys fees may naturally flow from and be an appropriate remedy for a willful stay violation, or a violation of the discharge order or confirmation order, there has been no such violation in this case by Defendant warranting an award of attorneys' fees for the Plaintiff.  For the foregoing reasons, the Court concludes that there is no basis to award fees in favor of Applicants against Defendant.

**Copies to:**

Laura J. Margulies, Esq.
Laura Margulies & Associates, LLC
6205 Executive Blvd.
Rockville, MD 20852

Brett Weiss, Esq.
Chung & Press, LLC
6404 Ivy Lane, Suite 408
Greenbelt, Maryland 20770

Joseph Creed, Esq.
Joseph, Greenwald and Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770

Kevin and Louise Newcomer
2617 Newton Street
Wheaton, MD 20902

Matthew G. Summers, Esq.
300 E. Lombard St.
18th Floor
Baltimore, MD 21202

Homecomings Financial, LLC
c/o J. Matthew Goodin, Esq.
Locke Lord Bissell & Liddell, LLP
111 South Wacker Drive

Chicago, IL 60606

**End of Memorandum**